UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Jesus Hernandez Napoles,<br>Petitioner<br>v.<br>Todd Blanche, et al.,<br>Respondents | Case No. 2:26-cv-00914-CDS-MDC<br>**Order Granting Amended Petition for Writ of Habeas Corpus**<br>[ECF No. 16] |

Petitioner Jesus Hernandez Napoles is a citizen of Cuba who is currently in the custody of the United States Immigration and Customs Enforcement (ICE).[1] ECF No. 16. Hernandez Napoles filed an amended petition for a writ of habeas corpus requesting his release because, in sum, his due process rights have been violated because he has been denied a bond hearing and is subject to prolonged detention. *See id.* I agree that Hernandez Napoles's due process rights have been violated so I grant his amended petition and order his release.

## I. Background

Hernandez Napoles is a citizen of Cuba[2] who first entered the United States, without inspection, around September 16, 2023. Am. pet., ECF No. 16 at 4. Upon arrival, he was detained by Border Patrol. *Id.* at 7. While detained, Hernandez Napoles received a credible fear interview. *Id.* An asylum officer found he had a credible fear. *Id.* Ultimately, Hernandez Napoles was released on his own recognizance on October 28, 2023, received a Notice to Appear, and was placed in removal proceedings. *Id.*; Resp., ECF No. 19 at 1.

[1] I refer herein to all named federal respondents collectively as "the respondents."

[2] The federal respondents erroneously contend that Hernandez Napoles is a citizen of Mexico. *See* ECF No. 19 at 1. He is a citizen of Cuba. *See* ECF No. 16-2 at 2 (petitioner's Form I-213).

Around May 28, 2025, Hernandez Napoles was arrested by the Las Vegas Metropolitan Police Department. ECF No. 16 at 4, 7. While he was in state custody, on June 30, 2025, Hernandez Napoles's Department of Homeland Security (DHS) removal proceedings were dismissed for DHS's failure to prosecute his case. *Id.* at 7. On August 7, 2025, Hernandez Napoles pled guilty to one count of attempted battery with substantial bodily harm in Nevada. ECF No. 16 at 4, 7. After entering his guilty plea, the next day, Hernandez Napoles was released into ICE custody. *Id.* at 7. Also on August 8, 2025, DHS issued a new Notice to Appear in immigration court on August 25, 2025, to show cause why he should not be removed from the United States. *Id.* at 7–8; *see also* Not. to appear, ECF No. 16-3. Then, in September 2025, Hernandez Napoles was remanded back to Nevada state custody, and his removal proceedings were administratively closed upon ICE's motion. ECF No. 16 at 4–5, 8. On October 10, 2025, Hernandez Naples was sentenced to 364 days in the Clark County Detention Center (CCDC), with 138 days of credit for time served for the attempted battery with substantial bodily harm case. *See id.* at 8; J., ECF No. 16-5.

At the completion of his sentence, Hernandez Napoles was returned to ICE custody and placed in new removal proceedings in February 2026. ECF No. 16 at 5. On April 9, 2026, Hernandez Napoles filed a pro se Form I-589, application for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* at 8. In his asylum application, he explained that he has neurological problems, attended special school for children with disabilities, and that he needs medications twice a day for his "brain injuries." *Id.* He appeared before an Immigration Judge on May 20, 2026. *Id.* During that hearing, Hernandez Napoles made an oral request for a bond hearing. *Id.* at 9. His request was denied. *Id.* Hernandez Napoles was informed he needed to submit a written request. *Id.*

Based on those allegations, Hernandez Napoles brings his habeas action, arguing three grounds for being released or awarded a bond hearing. *See id.* at 9–22. First, Hernandez Napoles contends that he is entitled to immediate release or, in the alternative, to a constitutionally adequate bond hearing because he is a member of the certified class *Jacobo-Ramirez*. *Id.* at 6–8. Second, he alleges that the respondent's failure to afford him an opportunity to seek release on bond violates the Immigration and Nationality Act (INA) as well as his right to due process under 8 U.S.C § 1226(a). *Id.* at 8–13. Lastly, Hernandez Napoles further claims that his prolonged detention without a bond hearing violates his due process rights under the Fifth Amendment of the U.S. Constitution. *Id.* at 13–22.

The federal respondents oppose the petition. Opp'n, ECF No. 19. First, they argue that the petitioner is not a *Jacobo-Ramirez*[3] class member. *Id.* at 6. Second, they argue § 1225(b) mandates detention and that his temporary detention does not offend due process. *See id.* at 6–7.

**II. Legal authority**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

---

[3] *See* Case No. 2:25-cv-2136-RFB-MDC, *Jacobo-Ramirez v. Mullin*.

## III. Discussion

As a threshold matter, I note that this action was screened to determine if the petitioner qualifies as a *Jacobo-Ramirez* class member. He was determined not to qualify. However, Hernandez Napoles argues that he qualifies, whereas the federal respondents disagree, arguing that the petitioner does not qualify because he is a subject to mandatory detention pursuant to § 1225(b)(1). *See* ECF No. 19 at 6. However, because I grant his petition on ground 2, I need not reach a conclusion on the merits of that argument at this time, so his request for relief under ground one is denied without prejudice.

### A. Section 1226(a) applies to Hernandez Napoles.

For the same reasons I've rejected the federal respondents' argument in other habeas actions that Section 1225(b)(2)(A) applies to noncitizens who have been in the country, in some instances for years, I again reject that argument here.[4] Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). On the other hand, Section 1226(a) states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> (B) conditional parole . . . .

8 U.S.C. § 1226(a). The plain language of these provisions indicates that both § 1225 and § 1226 govern the detention of non-citizens pending removal proceedings. However, there is a key

[4] *See e.g., Larios v. Mattos*, 2026 WL 1430985 (D. Nev. May 21, 2026); *Miranda-Vaquez v. Bondi*, 2026 WL 1194977 (D. Nev. May 1, 2026).

difference: § 1225 provides for mandatory detention, whereas § 1226 allows for the release of the noncitizen on conditional parole or bond. In fact, detention under § 1226(a) "is discretionary" and "provides for release on bond or conditional parole." *Avilez v. Garland*, 69 F.4th 525, 530 (9th Cir. 2023). "Although section 1226(a) sets out a discretionary detention scheme, § 1226(c) provides an exception which mandates detention for certain criminal noncitizens." *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1115 (E.D. Cal. 2025). Specifically, 8 U.S.C. § 1226(c)(1)(A) provides that the "Attorney General shall take into custody any alien who . . . is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title," 8 U.S.C. § 1226(c)(1)(A).

Here, there is no disagreement that Hernandez Napoles arrived via Texas in 2023. *See* ECF No. 16-2 at 3. He was released and issued a notice to appear due to a "positive credible fear." *Id.* Stated otherwise, he was not mandatorily detained pursuant to § 1225 in 2023; he was conditionally paroled under § 1226(a),) not § 1225. So the federal respondents' argument that the petitioner is lawfully detained under § 1225(b) fails. Hernandez Napoles's detention under § 1225(b) was unlawful, so his due process rights have been violated.

**B. There is no evidence that Hernandez Napoles was arrested pursuant to a lawful administrative warrant, so his detention is unlawful.**

Title 8, United States Code, 1226(a) provides that an alien may only be arrested and detained pursuant to a warrant issued by the Attorney General. *See* 8 U.S.C. § 1226(a). That sort of administrative warrant, known as a Form I-200, allows for the arrest and detention of aliens if issued by an authorized official. *See* 8 C.F.R. § 236.1(b)(1). Here, there is no evidence that the petitioner was arrested and detained pursuant to a Form I-200, much less that it was issued by an authorized individual. The record is likewise devoid of any evidence that Hernandez Napoles was arrested pursuant to some warrantless exception to the administrative warrant requirement. *See* 8 U.S.C. § 1357(a)(2) (explaining when an immigration officer and employee may conduct warrantless arrests). Rather, the entirety of the federal respondents' opposition to

the amended petition rises and falls on their argument that Hernandez Napoles is properly detained under § 1225(b). Since I have already rejected that argument, and there is no evidence that Hernandez Napoles was lawfully arrested and detained by a properly authorized Form I-200, his continued detention offends due process and I grant his amended petition as set forth below.[5]

## IV. Conclusion

IT IS THEREFORE ORDERED that petitioner Jesus Hernandez Napoles's amended petition for a writ of habeas corpus **[ECF No. 16] is GRANTED**

IT IS FURTHER ORDERED that the respondents must release petitioner Jesus Hernandez Napoles from the custody of the Nevada Southern Detention Center by Tuesday, November 16, 2026, no later than 12:00 p.m. The respondents must transport Hernandez Napoles to 501 Las Vegas Blvd. South, Las Vegas, Nevada that same day. The respondents must advise Hernandez Napoles's counsel of the estimated time of release in advance of that release for coordination purposes.

IT IS FURTHER ORDERED that the federal respondents must not impose release conditions that substantially interfere with Hernandez Napoles's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

IT IS FURTHER ORDERED that that the respondents return all of Hernandez Napoles's personal property to him upon his release.

IT IS FURTHER ORDERED that the federal respondents must file a notice of compliance with this order detailing the date, time, and location of his release no later than Wednesday, November 17, 2026, at 5:00 p.m. Once the respondents' status report confirming the petitioner's release is received, the case will be closed.

---

[5] Based on this determination, I need not reach Hernandez Napoles's remaining argument that his prolonged detention without a bond hearing violates his due process rights under the Fifth Amendment.

IT IS FURTHER ORDERED that the respondents are enjoined from re-detaining Hernandez Napoles without a pre-deprivation, individualized hearing to determine whether detention is appropriate.

IT IS FURTHER ORDERED that if the respondents desire to remove Hernandez Napoles to a third county not listed in his final order of removal, they must (1) provide the petitioner with notice of his purported third-country removal; (2) ask the petitioner whether he fears persecution or harm upon removal to the designated country and memorialize in writing the petitioner's response; (3) inform the petitioner that he may seek asylum, withholding, and relief under the United Nations Convention Against Torture by filing a motion to reopen with the immigration courts if the answer to that question is yes; and (4) provide adequate time to prepare and file a motion to reopen. *See Sarkisov v. Blanche*, 2026 WL 949019, at *6 (D. Nev. Apr. 8, 2026).

Dated: November 13, 2026

Cristina D. Silva
United States District Judge